# GROCE PROVISION COMPANY v. GENEVA ANNIS DORTCH et al.—350 S. W. (2d) 409.

Middle Section. April 7, 1961.

Certiorari Denied by Supreme Court September 6, 1961.

58

Lamb & McCown, Fayetteville, Claude Callicott, Nashville, for appellant.

Simms & Simms, Fayetteville, for appellee.

HUMPHREYS, J. Defendant Groce Provision Company, engaged in the packing house business in Fayetteville, Tennessee, bought a bull to slaughter. After the bull was delivered to its place of business it escaped and in the course of its efforts to elude its pursuers it tossed plaintiff, Mrs. Geneva Annis Dortch, inflicting serious, painful bodily injuries on her, as a result of which her husband, plaintiff H. E. Dortch, suffered the loss of her services as wife and incurred hospital expenses, doctors bills, and medical bills. By separate suits, which were consolidated for trial, plaintiffs sued for damages for these injuries and expenses. Mrs. Dortch recovered judgment for $7,500 and Mr. Dortch recovered judgment for $5,000. Defendant has appealed in error to this Court and assigned errors which present the sole question whether the trial court should have directed verdicts in its favor for failure of plaintiffs to prove negligence as averred.

We have concluded the assignments of error are not good for reasons which we shall state.

Mrs. Dortch sued on a five-count declaration alleging common law negligence in the first count and violation of various ordinances and statutes in the other four counts. The trial judge sustained motions for directed verdicts as to the last four counts, so the case was finally tried by the jury on the first count. The substance of the allegations in the first count is that, in spite of the fact the business place of defendant was located in a populated area of the Town of Fayetteville, and defendant

knew or should have known that an animal escaping therefrom would be likely to cause injury, and on this account owed the public and the plaintiff the duty to maintain its premises in such a manner that an animal could not escape, through defendant's negligence a bull it owned was permitted to escape and, before it was captured or killed, it ran over and severely injured plaintiff, Mrs. Dortch. That all of this was the direct proximate result of the carelessness and negligence of defendant. To this declaration defendant pleaded the general issue. Acting under instructions from the court to which no exception has been taken by defendant, the jury found defendant guilty of negligence and assessed damages as aforesaid.

The motion for directed verdict was predicated upon three grounds: (1) That there was no evidence of negligence. (2) If any negligence was shown, it was not sued on in the declaration. (3) Sections 44-1401 et seq., T.C.A., were complied with, so defendant was not guilty of negligence.

Considering first whether the evidence was sufficient to take the case to the jury, it is proper for us to observe at the outset that we are bound by the rule safeguarding the constitutional right of trial by jury, which requires us to take the evidence for plaintiffs as true, allow all reasonable inferences therefrom in their favor, discard all countervailing evidence, and if there is any material evidence sustaining their case, overrule the assignment of error insofar as this part of it is concerned. Poole v. First Nat. Bank of Smyrna, 29 Tenn. App. 327, 196 S. W. (2d) 563.

The evidence in favor of plaintiffs tends to prove the following: That defendant Groce Provision Com-

pany, a partnership operating a slaughter house and meat packing business in a populated area within the city limits of the Town of Fayetteville, bought a 1,195 pound bull to slaughter. This bull and a smaller bull were placed in a shed, which was a part of the business place building. This enclosure was called "the scales pen", and was contained inside of a larger shed. At this time the larger bull was noticed to be "skittish" and "nervous", and this information was relayed to an employee of defendant. In some manner the bulls shook loose the fastening on one of the gates to the scales pen and walked out into the main shed. They escaped from this shed, which was constructed of boards nailed horizontally to posts, by bearing down upon one of the top boards and thereby pulling it down from the post to which it was nailed. They then went over the lower boards into another part of the building. After being chased around inside of this building, during which the smaller bull was captured, the large bull escaped out of the building through a door opening onto a loading ramp which had been open during all the time the bull was running from room to room in the building. Defendant Bobby Groce, one of the partners in the packing business, stated that if this door had been closed this would have confined the bull in the building. On one occasion he was between the bull and this door. After the bull escaped through the open door, it ran into an alley where Bobby Groce shot it with a .22 rifle which seemed to have no effect on the animal except to make it angry. The bull escaped from this alley, going past its pursuers, and entered on the premises of the local Gulf Distributing Agency, which was fenced with a #9 wire fence attached to posts which were set in concrete and which from the proof we find

would be such a fence as would satisfy sec. 44-1701 et seq., T.C.A. After the bull ran into this fenced area the gates were closed upon him. Here, in spite of the fact the bull was obviously angry, and the previous shots fired at him by the .22 had not seemed to make any impression on him whatsoever except to make him angrier, defendant Bobby Groce shot the bull again with his .22 rifle. Upon this, the bull lunged at the top of the wire fence and rode it down and escaped. When the bull went on these premises, the owner of the premises went to get a larger caliber weapon with which to shoot the bull but defendant Bobby Groce did not wait for his return. After the bull escaped over the fence, it ran on up North Lincoln Avenue where an employee of defendant company ran into it twice with an automobile knocking it down once, but failed to stop it in its flight. From this point, the bull ran on until it saw Mrs. Dortch, whom it tossed with its head, throwing her some four feet into the air onto the concrete pavement or street, rendering her unconscious, cutting a deep gash in her forehead, and inflicting a compound fracture on the bones of her right arm below the elbow. The bull was finally killed with a high-powered rifle. After it was slaughtered, and while being dressed out, it was discovered that two of the .22 shots had taken effect in the animal's skull. It was also developed in the proof that defendant owned no ropes or lassoes or chains or other equipment to restrain or capture or hold an escaping animal.

Plaintiffs contend this proof shows the bull was the property of defendant and defendant was responsible for its custody and control. That because of defendant's negligence the bull was permitted to escape from the scale pen, which was the only pen designed and main-

tained by defendant in which to keep bulls, into a larger shed area, which was not designed and maintained as a place for the keeping of bulls. That from this area the bull escaped into the plant section of defendant's business place, from which, after roaming from one room to another for some period of time, the bull was allowed to escape out through a door opening to the outside, which had negligently been permitted to remain open during this time. That, when the bull was penned in on the Gulf Refining Distributorship property, defendant Bobby Groce negligently goaded it into escaping by shooting it with a .22 rifle which had already proved to be ineffective, instead of waiting for the high-powered rifle to be brought. That defendant had no equipment at its place of business or disposal to handle the bull or to capture it, and the methods resorted to, chasing it and yelling at it and shooting it with a small caliber rifle and running into it with a truck, did nothing but madden and enrage the animal so that it tried only the harder to escape, during which efforts it ran over and seriously injured plaintiff, Mrs. Dortch.

We are constrained to agree with plaintiffs that this is the effect of the proof. As to whether this proof constituted negligence or not, was a jury question. Louisville & Nashville R. Co. v. Fort, 112 Tenn. 432, 80 S. W. 429. In Power Packing Co. v. Borum, 8 Tenn. App. 162, this Court said that what a person of reasonable prudence would have done under the same or similar circumstances must be determined by the jury, from their knowledge of mankind and of how persons of reasonable prudence usually deport themselves in relation to their surroundings. In other words, would a reasonably prudent person have closed the door leading from the packing plant

to the loading ramp on the outside, so the bull could not escape? After the bull had escaped and had been penned in on the property of the Gulf Refining Distributorship, would a reasonably prudent person have shot at the bull with a .22 rifle which had already proved ineffectual, and the only effect of which appeared to be to madden the animal. Or, would a reasonably prudent person have waited until a weapon of heavier caliber could be brought to the scene; or waited until the bull, which defendant insists was actually a tame and gentle animal, could quiet down so that a lasso could be slipped around its neck and it could be led back to the packing plant? Would a reasonably prudent person have maintained a slaughter house for bulls and other animals in a populous area without any equipment, of even the most rudimentary nature, such as a lasso, with which to capture an escaping animal? Would a reasonably prudent person have conducted this effort to recapture an animal, which it insists was quiet and gentle, by running into it twice with a truck, yelling at it, shooting at it, and otherwise frightening it and harrying it into desperate flight? It seems to us, under all the authorities, these were jury questions and the trial judge was correct in submitting them to the jury. So, we overrule the first contention.

The next contention of defendant to be dealt with is that wherein it is said the allegations that the bull was negligently permitted to escape and roam unattended and unsecured are not specific enough to permit the jury to consider the particular acts committed by defendant in the course of this event. We think this is a too narrow view to take of the allegations of the declaration, and their effect. While it is true, as contended, these

allegations do not specify the particular acts committed by defendants in undertaking to recapture the bull after its escape, relied on by plaintiffs as constituting negligence, we believe the allegations are adequate in law to warrant the consideration of this proof. In Caruthers' History of a Lawsuit, 7th Ed., sec. 152, upon authority of a number of Tennessee cases, it is stated that a declaration should be as broad and general as the nature of the case will admit. That particular and specific allegations are not required. We think the allegations of the declaration come within the rule as laid down in this authority in this and other sections. The allegation that the bull was unattended and *unsecured* is equivalent to the assertion the animal was not under the *control* of defendant. Which, had it been, would have prevented the injuries and damages. These allegations, tantamount to the assertion the animal was not under control and this was negligence, would permit the proof of the inexpert, negligent efforts of defendant to reduce the animal to control, and this proof could be considered upon the main issue of whether defendant was negligent in not having the animal "secured". As we see it, plaintiff's declaration, in alleging defendant owed the duty of not permitting the bull to escape, and the further duty, once it had escaped, of securing it before it injured anyone, would permit introduction of proof, and consideration thereof by the jury, with respect to all the acts of defendant relating to the escape and the efforts to recapture, and would permit the jury to examine this evidence in order to say by its verdict whether defendant breached its duty of ordinary care with respect to these matters.

■ Defendant's third contention is, that, since the proof shows the bull was at one time or another in three different areas surrounded by lawful fences as defined in sec. 44-1701 et seq., T.C.A., it was not guilty of negligence. Wilson v. White, 20 Tenn. App. 604, 102 S. W. (2d) 531; Overbey v. Poteat, 206 Tenn. 146, 332 S. W. (2d) 197, construing the fence and enclosure laws, T.C.A. sec. 44-1701 et seq., are cited as authority for defendant's position. We cannot sustain this contention. In both Wilson v. White and Overbey v. Poteat (the first case involving damage to crops committed by trespassing animals, and the second case involving damages to an automobile resulting from colliding with a black angus steer), the only negligence relied on by the plaintiffs was that of defendants in permitting the animals to escape by failure to confine them within a lawfully fenced area, as defined by Sec. 44-1701 et seq. There were no averments or proof in those cases that the defendants knew of the escape and thereafter negligently failed to secure the animal so as to prevent injury to others. In each of these cases it is clearly pointed out, as a predicate for the decision reached, that the defendants were unaware that the animals had escaped. That is not the case here. The declaration in this case is predicated not only upon the negligence of defendant in permitting the animal to escape, but negligence in not securing the animal after knowledge that it had escaped. While the statutes referred to might require an answer in favor of defendants with respect to the portion of the plaintiff's case based on the escape (absent the proof of failure to close the door leading from the building to the loading ramp—and absent the proof as to shooting the animal with a .22 caliber rifle when it was penned in on the Gulf property),

those statutes cannot furnish an answer to that part of plaintiff's case based on the inexpert, negligent efforts to recapture the animal, all of which failed, and only served to drive the animal to desperate efforts to elude its pursuers, during which it injured plaintiff Mrs. Dortch.

No question is made as to the amounts of the verdicts. Under the proof the amounts allowed were well warranted.

■■■ A great deal of space has been devoted in the briefs of both parties to the citation and the quotation of law from many authorities. While we have read all of this with interest, and some edification, we think the law of the case is rather elementary, and is clearly and succinctly stated in the trial judge's instructions to the jury, wherein he pointed out that the suit was based upon negligence. That negligence consists of the failure to do what a reasonable and prudent person would ordinarily do under the circumstances of the situation. That the owner of a domestic animal is bound to exercise such reasonable care to prevent it from injuring another as an ordinarily careful and prudent person would exercise under the same circumstances, and that, if the jury found from the facts that the defendant had not done this, in other words, found defendant was guilty of negligence in allowing it to escape and in not recapturing it, and that this negligence was the proximate and direct cause of the injuries and damages sustained by the plaintiffs, the defendant would be liable. This is the law of the case. This is affirmed in Overbey v. Poteat, supra, wherein it is recognized that negligence may be a basis of recovery even where the owner of the animal has complied with

T.C.A. sec. 44-1701 et seq. (See third from last paragraph, Overbey v. Poteat, supra).

We think this was a case for the jury and that the trial judge properly submitted it to the jury. The assignments are overruled and the judgments are affirmed.

Hickerson and Shriver, JJ., concurring.